UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIG BABOON, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAP AMERICA, INC., et al.,<br><br>　　　　　Defendants. | Case No. 4:17-cv-02082-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 60, 65 |

Pending before the Court are Defendants' motion for summary judgment, Dkt. No. 60 ("Mot."), and Defendants' administrative motion to file under seal, Dkt. No. 65. For the reasons articulated below, the Court **GRANTS** Defendants' motion for summary judgment of invalidity and **GRANTS** Defendants' motion to file under seal.

I.　**BACKGROUND**

Plaintiff Big Baboon, Inc. ("Big Baboon") is the owner by assignment of United States Patent No. 6,343,275 (the "'275 Patent"), entitled "Integrated Business-to-Business Web Commerce and Business Automation System." Dkt. No. 37 ("FAC") ¶¶ 2, 19. Defendant SAP America, Inc. ("SAP") is a U.S. corporation involved in the business of selling software and services. *Id*. ¶ 12. Defendant HP, Inc. ("HP") is a U.S. corporation that sells and distributes computers and computer-related hardware and software and provides related services. *Id*. ¶ 13. Plaintiff alleges direct and willful infringement of the '275 Patent against Defendants for making, using, and selling the SAP R/3 Release 3.0E system and subsequent releases. *Id*. ¶¶ 10, 28–47.

Plaintiff filed this action against Defendants on April 13, 2017. Dkt. No. 1. In June 2017, Defendants filed a motion to dismiss, Dkt. No. 20, which the Court granted based on Plaintiff's failure to identify a product that allegedly meets every limitation of the asserted claims. Dkt. No. 36 at 5–7. To proceed past the pleading stage, Plaintiff, in its first amended complaint, alleged

that the updated releases to R/3 Release 3.0E satisfy every element of claim 15 of the '275 Patent. FAC ¶¶ 32–41, 47–49; Dkt. No. 44 at 2. The first accused product that Plaintiff listed as including web functionality is "R/3 Release 3.1" ("R/3 3.1"). FAC ¶¶ 29, 47. Plaintiff presumed that SAP sold the web-enabled R/3 system "[a]t some point in 1997 or thereafter." *Id*. ¶ 39.

Plaintiff then filed a motion for partial summary judgment, alleging that because Defendants had asserted as prior art the same products that Plaintiff subsequently asserted to be infringing, no element-by-element analysis was required for the Court to find infringement. Dkt. No. 44 at 9–10 (citing *Evans Cooling v. Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997)). The Court denied Plaintiff's motion for partial summary judgment because Plaintiff had not shown by uncontroverted evidence that the accused products infringed. Dkt. No. 50 at 4–5. On September 25, 2018, Defendants filed the present motion for summary judgment, and the Court held a hearing on the motion on November 15, 2018. Dkt. Nos. 60, 76.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings,

2

discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex*, 477 U.S. at 325.  In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105.  "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.  In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586.  A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)*.*  If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

### B. Discussion

Defendants contend that summary judgment must be granted because the accused R/3 3.1 product was on sale and sold before the '275 Patent's critical date of December 22, 1996.  Mot. at 1–2.  This argument presents two questions:  (1) whether Defendants have met their burden under *Evans Cooling* regarding the accused product; and (2) whether there is any genuine dispute as to whether the accused product was sold before the critical date.

#### i. Defendants Have Met Their Burden Under *Evans Cooling*

In *Evans Cooling*, the Federal Circuit held that when the same product is accused of

infringement by a patentee and claimed as prior art by the defendant, the alleged infringer may claim invalidity without an element-by-element analysis. 125 F.3d at 1450–52. The Federal Circuit explained that generally the accused infringer has the burden of proving that the alleged infringing product embodied the patented invention. *Id*. at 1451. However, in cases where "the entire basis of the lawsuit" is the patentee's allegation that the accused product infringes the patent, that burden is satisfied "by [plaintiff's] allegation, forming the sole basis for the complaint, that the [product] infringes." *Id*.

Here, after the Court dismissed its initial claim for failure to identify any accused product, Plaintiff specifically named R/3 3.1 as one of the allegedly infringing products. *See* FAC ¶¶ 29, 47; Dkt. No. 41 at 1. Under *Evans Cooling*, Plaintiff's accusations serve as a "binding admission" that satisfies Defendants' burden to prove for purposes of its invalidity argument that the accused product contains all of the elements of the asserted claims. *See Gammino v. Sprint Commc'ns Co. L.P.*, No. CIV. 10-2493, 2011 WL 3240830, at *2 (E.D. Pa. July 29, 2011) (citing *Evans Cooling*, 125 F.3d at 1451); *see also Vanmoor v. Wal-Mart Stores*, 201 F.3d 1363, 1366 (Fed. Cir. 2000) (defendant's burden of proving that prior art product anticipated accused product was satisfied by plaintiff's allegation that the prior art cartridges infringed the patent). Plaintiff, in its earlier motion for summary judgment, effectively conceded this point. Dkt. No. 44 at 8–9 (contention that because the parties "do not genuinely dispute that the web-enabled R/3 3.0E system has all elements of claims 15 [ ] of the '275 patent[,] [t]he *Evans Cooling* doctrine dictates that construction of the claims and a full comparison of the elements [ ] does not need to be made here.").

However, in an attempt to avoid this result and circumvent *Evans Cooling*, Plaintiff now reverses course, claiming that Defendants have not proven that the R/3 3.1 identified in Defendants' motion was actually the same as the infringing product. Opp. at 2 ("The defendants put forth no testimony on what technical elements the R/3 3.1 system that was purportedly shipped in October of 1996 contained—the defendants solely rely on the fact that the name of the product was allegedly the same."). The Court is not persuaded. Plaintiff's entire infringement theory relies on its allegation that R/3 3.1 met every element of the asserted claims of the '275 patent,

4

including the web-enabled functionality. FAC ¶¶ 32–39. To allege that R/3 3.1 included that functionality, Plaintiff itself used SAP documents from the '275 Patent reexamination proceedings. *Id.* ¶ 35. Only now does Plaintiff attempt to walk back the allegations in the FAC—without which it would not have survived the motion to dismiss stage—because it realizes that it made the fatal mistake of assuming that R/3 3.1 was released in "1997 or thereafter," instead of in 1996. *See id.* ¶ 39. But *Evans Cooling* is dispositive, and Plaintiff directly named R/3 3.1 as an infringing product.[1]

### ii. There is no Genuine Dispute of Fact Regarding Application of the On-Sale Bar

Because the entire basis of Plaintiff's infringement claim is its allegation that R/3 3.1 infringed the '275 Patent, under *Evans Cooling* the only question remaining is whether there is any genuine dispute of material fact as to whether R/3 3.1 was on sale before the critical date. Defendants have shown that there is no such dispute.

Plaintiff is not entitled to a patent if "the invention was . . . in public use or on sale in this country, more than one year prior to the date of application for patent in the United States." 35 U.S.C. § 102(b) (pre-AIA). "Whether an invention was placed on sale prior to the critical date is ultimately a conclusion of law . . . although it is based on underlying facts." *Evans Cooling*, 125 F.3d at 1450–51. The Federal Circuit has observed that the concept of "sale" as applied to non-tangible items such as software "is ambiguous," but found that licensing of software qualifies as a sale for the purposes of § 102(b). *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1378 (Fed. Cir. 2003) (finding that the lease of a computer program "qualified as an on-sale event").

Defendants present evidence showing that the web-enabled R/3 3.1 system was on sale prior to December 22, 1996, the '275 Patent's critical date, by way of licensing agreements. Mot.

---

[1] Plaintiff also asserts that the United States Patent and Trademark Office ("USPTO") found that the R/3 3.1 system is not prior art. Opp. 73 at 12. However, the USPTO did not specifically address whether R/3 3.1 invalidated claim 15. *See* Dkt. No. 73-2 at 59–60 ("Claim 15 has been determined to be patentable over the prior art *currently of record* in this proceeding." (emphasis added)). Regardless, even if the USPTO did consider R/3 3.1 as prior art, as discussed, *Evans Cooling* obviates the need for an element-by-element analysis. *See Evans Cooling*, 125 F.3d at 1451.

5

at 2.  On July 15, 1994, Defendant SAP entered into a license agreement to allow Intel Corporation ("Intel") to use "SAP's proprietary R/3 Software," including "any Releases, Version, or Correction Levels of the Software as contemplated by this Agreement."  Dkt. No. 66–1, Ex. F, § 1.19.  "Version" is defined in the agreement to mean "each issuance of each Release of the Software developed by SAP AG which has incorporated further development work within the technology of that Release and is identified by the numeral to the right of the decimal point (e.g., 2.1)."  *Id*. § 1.23.  The agreement required Intel to "pay SAP license fees for the Software," which were "calculated based on the number of Active Users."  *Id*. § 4.1.  On April 14, 1995, Defendant SAP entered into a license agreement with Lucent Technologies ("Lucent") on similar terms.  Dkt. No. 66–2, Ex. H.[2]

The evidence shows that SAP delivered R/3 3.1 web-enabled software products to Intel and Lucent pursuant to the license agreements on October 28, 1996.  Dkt. Nos. 63–2, 63–3.  Contrary to Plaintiff's arguments, under *Minton*, evidence of software sales under licensing agreements entered prior to the critical date satisfies the on-sale exception in 35 U.S.C. § 102(b).  *See Minton*, 336 F.3d at 1378.  Accordingly, based on the evidence presented, viewed in the light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact that there was an invalidating sale, or offer of sale, before the '275 Patent's critical date.

### iii.  Defendants' Rule 56(d) Argument is Unavailing

Finally, Plaintiff argues that summary judgment should be denied because it is "entitled to conduct discovery on the technical modification timeline of the R/3 3.1 system."  Opp. at 13.  Under Federal Rule of Civil Procedure 56(d), if Plaintiff shows that it cannot present facts essential to justify its opposition, then the Court has discretion to defer considering the motion or allow Plaintiff time to take discovery.  Fed. R. Civ. P. 56(d).  However, Plaintiff fails to show what other facts it could present in opposition that would matter.  Under *Evans Cooling*, Plaintiff's own allegation that R/3 3.1 is the infringing product obviates the need for an element-by-element analysis that might make additional discovery potentially necessary.  *See Gammino*, 2011 WL

---

[2] The original license agreement was between AT&T Corporation and SAP, but the agreement was assigned from AT&T Corporation to Lucent on March 25, 1996.  Dkt. No. 66-5, Ex. J.

6

3240830, at *6. Plaintiff speculates in essence that there might have been materially different versions of R/3 3.1, but advances no basis for its claim that evidence exists to support this theory. *See* Dkt. No. 73-1. And as Defendants point out, Plaintiff did not seek to depose any of Defendants' declarants, despite having three weeks to oppose the summary judgment motion. Dkt. No. 74 at 13; Dkt. No. 74-1 ¶ 2; *see also* Dkt. No. 58.

## III. MOTION TO FILE UNDER SEAL

Also pending before the Court is Defendants' motion to file under seal records attached to their motion for summary judgment. Dkt. No. 65. Defendants seek to file under seal the unredacted versions of Exhibits G and I to the Declaration of Samir Pandaya, which are the redacted appendices to the license agreements between SAP and Intel, and SAP and Lucent, respectively. *See* Dkt. No. 65-1.

### A. Legal Standard

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not,

7

1   without more, compel the court to seal its records." *Id.*

2   The Court must "balance[] the competing interests of the public and the party who seeks to
3   keep certain judicial records secret. After considering these interests, if the court decides to seal
4   certain judicial records, it must base its decision on a compelling reason and articulate the factual
5   basis for its ruling, without relying on hypothesis or conjecture." *Id.* Civil Local Rule 79-5
6   supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a
7   document or portions of it under seal must "establish[] that the document, or portions thereof, are
8   privileged, protectable as a trade secret or otherwise entitled to protection under the law . . . [t]he
9   request must be narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b).

10   Records attached to nondispositive motions, however, are not subject to the strong
11   presumption of access. *See Kamakana*, 447 F.3d at 1179. Because such records "are often
12   unrelated, or only tangentially related, to the underlying cause of action," parties moving to seal
13   must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure.
14   *Id.* at 1179–80 (quotation omitted). This requires only a "particularized showing" that "specific
15   prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v.*
16   *Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c).
17   "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will
18   not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation
19   omitted).

20   **B. Discussion**

21   Because Exhibits G and I are attached to a dispositive motion, the Court will apply the
22   compelling reasons standard. Defendants allege that the unredacted versions of Exhibits G and I
23   are sealable because they contain confidential pricing information that would be harmful to
24   Defendant SAP if the information were to become publicly available. Dkt. No. 65-1.

25   The Court finds that there is good cause for the unredacted versions of Exhibits G and I to
26   be sealed. The Court agrees that if the confidential pricing information is published, this may
27   harm Defendant SAP or Intel and Lucent's competitive standing. *See, e.g.*, *FTC v. Qualcomm*
28   *Inc.,* No. 17-CV-220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) (granting motion to

seal as information may "divulge[] terms of confidential contracts, contract negotiations, or trade secrets"); *Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345-BLF (JSC), 2015 WL 3988132, at *5 (N.D. Cal. June 30, 2015) ("Courts regularly find that litigants may file under seal contracts with third parties that contain proprietary and confidential business information."). Further, these documents appear to have been narrowly tailored to seal only sealable material (the confidential pricing information), as required by Civil Local Rule 79-5. Therefore, the Court finds that there is good cause to grant the motion to file under seal the unredacted versions of Exhibits G and I.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment of invalidity. *See* Dkt. No. 60. The Court also **GRANTS** Defendants' administrative motion to file under seal. *See* Dkt. No. 65. Pursuant to Civil Local Rule 79-5(f)(1), documents filed under seal as to which the administrative motions are granted will remain under seal and the public will have access only to the redacted version.

The Court directs the Clerk to enter judgment in Defendants' favor and close the case.

**IT IS SO ORDERED.**

Dated:  4/24/2019

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge